380 So.2d 646 (1979)
Alfred E. MAHFOUZ, Sr.
v.
Gordon OGDEN, Jr. et al.
Alfred E. MAHFOUZ, Sr.
v.
Gordon C. OGDEN, Jr.
Nos. 12939, 12940.
Court of Appeal of Louisiana, First Circuit.
December 27, 1979.
*647 August H. Tabony, Eugene A. Booth, Michael C. Palmintier, Baton Rouge, for plaintiff-appellant Alfred E. Mahfouz, Sr.
William H. Cooper, Jr., Conrad S. Adkins, Baton Rouge, for defendant-appellee J. Al Amiss, Sheriff.
Gerard E. Kiefer, Baton Rouge, for Gordon C. Ogden.
R. Michael Caldwell, Baton Rouge, for defendant-appellee Zurich Ins. Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
These consolidated cases arise out of a lease agreement between the plaintiff and one defendant. Plaintiff-lessee sued for damages caused by wrongful sequestration (12939) in one case and for breach of lease (12940) in the other. The first suit was brought against the lessor, Ogden, and J. Al Amiss, sheriff of East Baton Rouge Parish, and the second suit against Ogden. After consolidating the cases and hearing plaintiff's evidence, the trial judge granted the defendants' motion for a directed verdict. Plaintiff appeals from that judgment. Both cases will be handled in this opinion.
The primary issues before us are whether plaintiff, the sole stockholder of The Hut of Louisiana, Inc., can sue in his own name for damages suffered by the corporation and, if he can, whether he has proven any damages were incurred through defendants' fault. Also at issue is whether plaintiff has proven any damages suffered by him personally.
*648 Plaintiff leased a building from Ogden on October 2, 1976 as an outlet for his retail clothes business in Baton Rouge. The lease provided for a five-year term initially and gave plaintiff the option to renew for another five years. Under the terms of the lease, Ogden agreed to make certain repairs to the building, including repair of leaks in the roof.
Plaintiff paid his rent timely in November but he stopped payment on his December rent check because he felt Ogden had not complied with the lease terms regarding repairs.
Plaintiff then brought suit against Ogden for breach of the lease and Ogden, in retaliation, sued to cancel the lease, accelerate the rent and sequester the inventory and fixtures in the building. The parties decided to settle their differences out of court and entered into an amended lease agreement on December 15, 1976.
In the lease amendment, both parties agreed to drop their suits. Additionally, the term of the lease was amended to 16 months, with defendant agreeing to lease or sell the building as soon as possible. Plaintiff also agreed to pay December's rent.
Plaintiff drew a check to Ogden's order on December 17, 1976, with the understanding that the check would be paid the following Monday. However, upon checking with the bank, defendant learned there were insufficient funds to pay the check so he continued the sequestration which he previously had agreed to lift.
On December 21st, fire gutted almost all of the building. The December rent check cleared the following day. Plaintiff claims that some of the inventory in the building survived the fire but that his attempts to remove and secure the salvageable inventory were blocked by Ogden's wrongful sequestration.
Soon after the fire, plaintiff exercised his option to renew the lease for five years as provided in the original contract. He also requested that Ogden rebuild the building within 6 months, as Ogden was obligated to do under the original lease agreement. Ogden refused, contending that the option to renew and the obligation to rebuild were cancelled when the lease term was shortened to 16 months. Ogden's sequestration was eventually lifted in January, but plaintiff claims that the inventory which was left in the building had been taken by Ogden or thieves.
After the fire, The Hut of Louisiana, Inc. sued its insurer and recovered some $45,000.00 for loss of inventory. Hut of Louisiana, Inc. v. Zurich Ins. Co., 372 So.2d 687 (La.App.1st Cir. 1979). The plaintiff then personally sued Ogden for breach of lease, alleging loss of $270,000.00 in profits because of Ogden's refusal to rebuild. In this same suit, plaintiff also claimed $6,000.00 for repairs he made to the building before the fire. Plaintiff also sued Ogden and Amiss for loss of inventory through sequestration; employees' salaries; attorney's fees; damage to reputation and punitive damages for a sum of $1,523,428.00. His claim in that suit was that some of the inventory was not covered by the judgment against his insurer and that this inventory was lost through the fault of Ogden and the sheriff.
After plaintiff presented his case, the defendants moved for a directed verdict under C.C.P. art. 1810, claiming that the merchandise and fixtures in the building were owned by The Hut of Louisiana, Inc. and not by plaintiff, the sole stockholder. Their claim, therefore, was that plaintiff had suffered no damages personally and that he had no right to sue in his own name for damages allegedly incurred by the corporation. Ogden also contended that plaintiff failed to prove breach of lease in the suit against him (Ogden). The trial judge granted both motions for directed verdict.
RIGHT TO SUE
On appeal, the plaintiff claims that defendants judicially admitted through their answers to his suit that he was the owner of the inventory remaining in the building. Alternatively, plaintiff asserts that he was the alter ego of the corporation and as such had the right to sue for wrongful sequestration. Sheriff Amiss contends that he only admitted that plaintiff's property in the building was seized, and not that plaintiff *649 owned any or all of the property in the building.
After a careful review of the record, the briefs and the trial court's reasons for judgment, we find that the defendants did not judicially admit plaintiff's ownership of any inventory in the building. Further, we hold that plaintiff, who conducted business in corporate form and reaped the benefits of incorporation, cannot sue individually for damages incurred by the corporation. C.C. art. 432; C.C.P. art. 690; Mintz Furniture, Inc. v. Audubon Insurance Co., 159 So.2d 719 (La.App. 4th Cir. 1964); Mioton v. Del Corral, 132 La. 730, 61 So. 771 (1913); see also Dawson Engineers, Inc. v. Lemel Iron Works, Inc., 307 So.2d 771 (La. App.1st Cir. 1975). Even if plaintiff had brought this suit in the name of the corporation, the evidence he presented at trial to substantiate the damages he claimed was sketchy at best. The plaintiff failed to prove by a preponderance of the evidence that any salvageable inventory remained in the building after the fire or that the insurance proceeds did not cover all inventory losses sustained by either him or the corporation. The evidence further fails to show any negligence on the part of either Ogden or Amiss or Amiss' employees.
We also hold that the plaintiff has failed to prove that he personally suffered loss as a result of the sequestration. To show loss of business reputation plaintiff had to first show that he had a good reputation. This he failed to do. Plaintiff simply failed to carry the burden of proof imposed upon him in this lawsuit.
BREACH OF LEASE
Plaintiff's claim that Ogden breached the lease by refusing to rebuild turns solely on the interpretation of the original lease and the amendment. Had the lease not been amended, Ogden unquestionably would have been obligated to rebuild or, in lieu thereof, to pay any damages suffered by plaintiff as a result of the refusal.
However, the amendment to the lease, especially that portion of the amendment shortening the term from 5 years to 16 months, changed the tenor of the entire lease agreement. By shortening the time he had to remain in the building and by requiring Ogden to sell or re-lease the building as soon as possible, plaintiff evidenced an intent to rid himself of the lease as soon as he could. This new intent simply does not square with the original lease provisions allowing plaintiff an option to renew and requiring defendant to rebuild. Both plaintiff and defendant Ogden wanted out of their original contract quickly and quietly. Plaintiff apparently changed his mind after the building burned, and tried to capitalize on an opportunity by holding the defendant to the original lease terms.
Like the trial judge, we hold that the amendment impliedly altered those provisions of the original agreement on renewal and rebuilding. Plaintiff's intent was to get out of the building as soon as he could, and the fire brought that about even quicker than the amendment.
We likewise find that plaintiff's claim for improvements are unsubstantiated.
Therefore, for the above and foregoing reasons the decision of the trial court is affirmed as to both appeals. Plaintiff will bear the costs of these appeals.
AFFIRMED.